```
              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF KANSAS
```

ERSILA M. HERNANDEZ,

           Plaintiff,

vs.                                     Case No. 15-7183-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

           Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On January 31, 2014, administrative law judge (ALJ) Christine A. Cooke issued her decision (R. at 12-19).  Plaintiff alleges that she had been disabled since November 4, 2011 (R. at 12).  At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since November 4, 2011, her

4

application date (R. at 14).  At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 14).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 15).  After determining plaintiff's RFC (R. at 15-16), the ALJ found at step four that plaintiff has no past relevant work (R. at 18).  At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 18-19).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 19).

**III.  Did the ALJ err in her analysis of the medical opinion evidence regarding plaintiff's mental limitations?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's

reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  <u>Robinson</u>, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  <u>Castellano v. Secretary of Health & Human Services</u>, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still

6

entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

Plaintiff argues that the ALJ erred in her evaluation of the opinions of Dr. Sheehan (Doc. 19 at 22-23). On June 14, 2012, Dr. Sheehan prepared a consultative evaluation on the plaintiff; the evaluation was performed on June 6, 2012 (R. at 443). The conclusions of Dr. Sheehan were as follows:

> The claimant appeared to be a reliable informant. Her reported symptoms and presentation are consistent with severe Borderline Personality Disorder and a mood disorder. The claimant views everything in her life as a catastrophe. Although she is able to understand and remember simple instructions, **her ability to concentrate and**

7

> **persist on even simple tasks during a normal workday in a competitive environment is very limited because of her agitation and distractibility. Because of the claimant's extremely dysregulated mood, her capacity to interact appropriately with the general public and adapt to the environment is very limited**.
>
> The claimant has poor judgment and low insight. She is not compliant with medication and despite being educated about this appears to have no intention of becoming compliant. The claimant also needs intensive psychological treatment (more than once weekly)…Because of the severity of her present difficulties it may take more than 12 months before significant improvement is achieved.

(R. at 446, emphasis added).

The ALJ indicated that the report from Dr. Sheehan indicated that plaintiff would have "some" difficulty concentrating and interacting with others. Based on this opinion, the ALJ stated that plaintiff could perform simple work that did not involve substantial interaction with others, and indicated that these limitations were incorporated in the RFC findings (R. at 17). In her mental RFC findings, the ALJ stated the following:

> Mentally, claimant should never be expected to understand, remember, or carry out detailed instructions. Her job duties must be simple, repetitive, and routine in nature. Claimant should never be expected to exercise independent judgment regarding the nature of her job duties. These duties should never require contact with the public. However, claimant can have up to

8

>           occasional contact with co-workers and with
>           supervisors… .

(R. at 16).

In her decision, the ALJ stated that Dr. Sheehan reported that plaintiff would have "some" difficulty concentrating and interacting with others (R. at 17).  That is not what Dr. Sheehan wrote in her report.  Dr. Sheehan wrote that although plaintiff can understand and remember simple instructions, "<u>her ability to concentrate and persist on even simple tasks</u> during a normal workday in a competitive environment is <u>very</u> limited because of her agitation and distractibility" (R. at 446, emphasis added).[1]  Dr. Sheehan also opined that plaintiff's ability to interact appropriately with the public is "very" limited (R. at 446); because of this limitation, the ALJ included in her RFC findings that plaintiff was to have no contact with the public (R. at 16).  However, without explanation, the ALJ failed to explain why her RFC findings fail to reflect the opinion of Dr. Sheehan that plaintiff's ability to concentrate and persist on even simple tasks during a normal workday is very limited because of her agitation and distractibility.  The ALJ also failed to include in her RFC

---

[1] Earlier in her decision, the ALJ referenced the report from Dr. Sheehan, stating that the report indicated that plaintiff's ability to concentrate and persist on even simple tasks was "limited" (R. at 14).  In fact, as noted above, Dr. Sheehan indicated that plaintiff's ability to concentrate and persist on even simple tasks during a normal workday in a competitive environment was "very" limited because of her agitation and distractibility (R. at 446).

findings the opinion of Dr. Sheehan that plaintiff's ability to adapt to the environment is very limited.

The ALJ's mental RFC findings clearly conflict with the opinions of Dr. Sheehan.  The ALJ's RFC findings paint a **very** different picture of plaintiff's mental limitations as compared to the report of Dr. Sheehan.  According to SSR 96-8p, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." 1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  The ALJ provided no explanation for not including the limitations set forth by Dr. Sheehan in her RFC findings.  This is especially inexplicable because the ALJ indicated that she accorded "great weight" to this opinion (R. at 18).

In the case of Martinez v. Astrue, 422 Fed. Appx. 719, 724-725 (10th Cir. Apr. 26, 2011), the court held that the ALJ erred by failing to include all of the limitations found by Dr. LaGrand without explaining why he rejected some of the limitations, especially in light of the ALJ's conclusion that the medical source's opinion was entitled to "great weight." The ALJ simply ignored certain limitations contained in the medical report.  The court held that the ALJ may have had

10

reasons for giving great weight to some of the limitations set forth by the medical source, while rejecting other limitations. However, before rejecting some of the limitations, the ALJ was required to discuss why he did not include those limitations. An ALJ must explain why he rejected some limitations contained in a RFC assessment from a medical source while appearing to adopt other limitations contained in the assessment. Haga v. Astrue, 482 F.3d 1205, 1207-1208 (10th Cir. 2007); Frantz v. Astrue, 509 F.3d 1299, 1302-1303 (10th Cir. 2007); Wilson v. Colvin, 541 Fed. Appx. 869, 872-874 (10th Cir. Oct. 16, 2013); Heppler v. Colvin, Case No. 12-1267-SAC (D. Kan. Aug. 28, 2013; Doc. 17 at 9-14). The ALJ's failure to either incorporate the limitations set forth by Dr. Sheehan, or provide a legitimate reason(s) for not including them, constitutes reversible error.

This error is compounded upon examining other medical source opinions contained in the record. On June 19, 2012, Dr. Altomari prepared a mental RFC assessment on the plaintiff after reviewing the record, including the evaluation by Dr. Sheehan (R. at 53-54, 55-57). Dr. Altomari found plaintiff moderately limited in 8 categories. In his narrative RFC findings, Dr. Altomari found the following:

> The claimant is able to understand and remember simple instructions.
>
> Her ability to concentrate and persist on even simple tasks during a normal workday in

>     a competitive environment is very limited
>     because of her agitation and
>     distractibility.
>
>     Because of cl's extremely dysregulated mood,
>     her capacity to interact appropriately with
>     the general public and adapt to the
>     environment is very limited.
>
>     The claimant has the ability to adapt to
>     most usual changes common to a competitive
>     work setting.

(R. at 56-57).

On September 10, 2012, Dr. Blum also prepared a mental RFC assessment on plaintiff after reviewing the record, including the evaluation of Dr. Sheehan (R. at 69-70, 73-75). Dr. Blum's findings match those of Dr. Altomari (R. at 73-75).

The ALJ accorded some weight to these opinions, noting that the overall record would indicate mild to moderate mental limitations, and further noting that plaintiff had not been to the emergency room or psychiatrically hospitalized since her amended onset date (R. at 18). However, the opinions of Dr. Altomari and Dr. Blum fully accord with the opinions of Dr. Sheehan, to whom the ALJ accorded great weight.

An exact correspondence between a medical opinion and the RFC is not required. In reaching his RFC determination, an ALJ is permitted, and indeed required, to rely on all of the record evidence, including but not limited to medical opinions in the file. That said, in cases in which the medical opinions appear

to conflict with the ALJ's decision regarding the extent of a plaintiff's impairment(s) to the point of posing a serious challenge to the ALJ's RFC assessment, it may be inappropriate for the ALJ to reach an RFC determination without expert medical assistance. Wells v. Colvin, 727 F.3d 1061, 1071-1072 (10th Cir. 2013) (in Wells, the ALJ rejected 3 medical opinions, finding that they were inconsistent with the other evidence in the file; the court directed the ALJ, on remand, to carefully reconsider whether to adopt the restrictions on plaintiff's RFC detailed in the medical opinions, or determine whether further medical evidence is needed on this issue).

In this case, the ALJ gave great weight to the opinions of Dr. Sheehan, but inexplicably failed to fully incorporate the limitations in her opinion in plaintiff's mental RFC findings. Furthermore, Dr. Sheehan's opinions were quite similar to the subsequent opinions offered by Dr. Altomari and Dr. Blum. Finally, the ALJ failed to cite to any evidence that contradicts the opinions of the three medical sources. On these facts, the court finds that the medical opinions clearly conflict with the ALJ's mental RFC findings to the point of posing a serious challenge to the ALJ's mental RFC findings. On remand, the ALJ must explain, in light of her finding that she accorded great weight to the opinions of Dr. Sheehan, why she did not incorporate those limitations, and those of Dr. Altomari and Dr.

Blum (whose findings accord with the opinions of Dr. Sheehan), in her mental RFC findings for the plaintiff.[2]

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 15th day of August 2016, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

---

[2] Plaintiff also alleges error in the ALJ's failure to mention GAF scores. The court finds no clear error on this issue. GAF scores may be of considerable help to the ALJ in formulating the RFC, although they are not essential to the RFC's accuracy. Harper v. Colvin, 528 Fed. Appx. 887, 891 (10th Cir. July 1, 2013); Petree v. Astrue, 260 Fed. Appx. 33, 42 (10th Cir. Dec. 28, 2007).